UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL MEDICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> INDX LIFECARE, INC., <br><br> Defendant. | Case No. 16-cv-04425 NC <br><br> **REPORT AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT, AND REQUEST FOR REASSIGNMENT** <br><br> Re: Dkt. No. 15 |

Plaintiff National Medical Services, Inc. (NMS) moves for default judgment against defendant iNDx Lifecare, Inc. (iNDx) to recover amounts due on unpaid loans. Dkt. No. 1. NMS alleges three breach of contract claims and one claim of common count under California law. *Id.* Based on iNDx's failure to defend itself from this motion, the Court finds that a default judgment against iNDx is proper for all claims.

The Court RECOMMENDS that NMS is entitled to $444,885.77 in damages, attorneys' fees, and costs. The Court ORDERS this case to be reassigned to a district court judge.

I.  **BACKGROUND**

NMS and iNDx entered into a Product Development Agreement (PDA) to jointly develop small molecule testing and assay products on August 1, 2014. Dkt. No. 1 at 2. NMS's contractual duties included providing iNDx with financing. *Id.* at 1; Dkt. No. 1-1 at 9. As detailed in the PDA, iNDx's contractual duties included (1) developing specific

Case No. 16-cv-04425 NC

prototype devices according to a stipulated schedule and (2) complying with reporting provisions. Dkt. No. 1 at 2-3. NMS fulfilled its duties under the PDA. *Id.* at 3.

On October 2, 2014, the parties entered into an addendum to the PDA (Addendum) to jointly develop a new device and provide iNDx with additional financing. *Id.* at 3, 7. NMS fulfilled its duties under the Addendum. *Id.* at 3.

On December 10, 2015, NMS loaned iNDx $150,000 through an unsecured promissory note (Note) with an annual interest rate of 5% on the outstanding principal balance. *Id.* at 3; Dkt. No. 15-1 at 2. There are a number of ways iNDx could default on the Note (Event of Default), including by breaching the terms of the PDA or Addendum. Dkt. No. 1-3 at 3. Repayment of the outstanding principal and accrued interest becomes due within 10 days of written notice of an Event of Default. *Id.* The outstanding principal and interest becomes immediately due upon initiation of bankruptcy proceedings. *Id.*

In January and February of 2016, NMS made Additional Loans to iNDx totaling $250,000 on the same terms as the Note. Dkt. No. 15-1 at 2. NMS disbursed the loan through wire transfers of $150,000 on January 22, 2016, and $100,000 on February 25, 2016. *Id.*

NMS alleges that iNDx failed to perform many of its material obligations under the PDA and Addendum. *Id.* at 6-7. NMS notified iNDx of its failure to perform and of the ensuing Event of Default. *Id.* NMS alleges it incurred costs as a result of iNDx's breach, including an additional $79,000 loan to iNDx. Dkt. No. 7. iNDx has not repaid the Note, the Additional Loans, or the $79,000 loan after iNDx's breach of the PDA and Addendum.[1] *Id.* at 3.

NMS filed this case on August 5, 2016, and served iNDx on August 7, 2016. Dkt. Nos. 1, 7. NMS alleges three claims for relief for breach of contract under the PDA and Addendum, the Note, and the Additional Loans. Dkt. No. 1 at 4-7. NMS alleges a

---

[1] NMS is not seeking remedies based on the initial $1,000,000 financing to iNDx under the PDA or the $500,000 additional financing through the Addendum in this claim for relief. Dkt. No. 1 at 3, 8.

Case No. 16-cv-04425 NC    2

1 common count claim for the Additional Loans. *Id.* at 7.

2 On August 19, 2016, iNDx filed a Notice of Bankruptcy and a Request for Automatic Stay, which was granted on August 29, 2016. Dkt. Nos. 9, 10. On December 16, 2016, the bankruptcy court granted iNDx's motion to voluntarily dismiss its Chapter 11 case. Dkt. No. 11-1. NMS then filed a Notice of Termination of Automatic Stay on December 29, 2016. Dkt. No. 11.

On February 1, 2017, NMS notified iNDx's bankruptcy counsel that NMS would move for default judgment unless an answer was filed. Dkt. No. 15-2 at 2. iNDx failed to answer NMS's complaint. Dkt. No. 15 at 2. NMS filed a request for an entry of default, which was granted by the Clerk of Court on February 15, 2017. *Id.*, Dkt. No. 13. On March 15, 2017, NMS moved for default judgment. Dkt. No. 15 at 2.

NMS consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c); however, iNDx has not participated in this litigation. Dkt. No. 8. Thus, not all parties have consented to the jurisdiction of a magistrate judge.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule

Case No. 16-cv-04425 NC 3

of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

### III. DISCUSSION

#### A. Jurisdiction

In considering whether to enter a default judgment, courts have "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

##### 1. Personal Jurisdiction

"[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

Here, the PDA and Addendum stipulate that any action for dispute under the agreements must be brought in Santa Clara County state or federal court, and that each party "irrevocably submits to the exclusive jurisdiction" of that court. Dkt. Nos. 1-1 at 21 (PDA), 1-2 at 7 (Addendum). iNDx is located in California and maintains an office, conducts business, and has agents or employees in Santa Clara County. Dkt. No. 1 at 2. Further, the PDA and Addendum both stipulate that the agreements are subject to California law and any disputes may be brought in Santa Clara county. Dkt. Nos. 1-1 at 21 (PDA), 1-2 at 7 (Addendum). Finally, the underlying events that gave rise to the claim arose in Santa Clara County. Therefore, the Court may exercise personal jurisdiction over iNDx.[2]

##### 2. Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction over actions between citizens of

---

[2] For these same reasons, venue is proper in this Court.

Case No. 16-cv-04425 NC          4

different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

iNDx is a Delaware Corporation with its principal place of business in California.[3] Dkt. No. 23 at 3. NMS is a Pennsylvania Corporation with its principal place of business in Pennsylvania. *Id.* at 1. Thus, NMS is diverse from iNDx. 28 U.S.C. § 1332(a)(1).

NMS claims damages of $400,000 plus accrued interest, $16,797 in attorneys' fees, and $1,306 in costs. Dkt. Nos. 1 at 8, 21 at 2 (Second Sullivan Decl.). This claim meets the amount in controversy requirement and the Court has subject matter jurisdiction. 28 U.S.C. § 1132(a).

### B. Service

iNDx was properly served with the complaint on August 8, 2016. Dkt. No. 7. iNDx is neither a minor nor an incompetent person. Dkt. No. 15-1 at 2. NMS also emailed iNDx's bankruptcy attorney advance notice of NMS's intent to move for default judgment on February 1, 2017. Dkt. No. 18 at 2-3.

iNDx was served NMS's request for default on February 10, 2017, and with NMS's motion for default judgment on March 14, 2017. Dkt. Nos. 7, 15-3. Thus, the Court is satisfied that service was completed.

### C. Default Judgment

#### 1. Merits and Sufficiency of the Complaint

The second and third *Eitel* factors examine the substantive merits and the sufficiency of the complaint. 782 F.2d at 1471-72. Once a defendant enters default, all of the plaintiff's well-pleaded, factual claims are deemed admitted, except with respect to the amount of damages. *Shanghai Automation*, 194 F. Supp. 2d at 1000. Conclusions of law or claims that are legally insufficient are not deemed admitted. *Cripps v. Life Ins. Co. of*

---

[3] NMS's original complaint insufficiently alleged iNDx's citizenship by omitting the company's principal place of business. Dkt. No. 1. NMS later submitted a declaration attesting to iNDx's citizenship at the time of case filing. Dkt. No. 23. The Court finds that the supplemented record sufficiently amends the complaint. 28 U.S.C. § 1653; *see Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147-48 (9th Cir. 1998) (plaintiff's submission of sworn affidavits certifying the parties' citizenship cured deficient jurisdictional claims without formal amendment to the complaint).

*N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). NMS's motion seeks recovery for three breach of contract claims and one common count claim. The Court will examine each in turn.

### a. Breach of Contract (Note)

Claim 1 alleges a breach of contract under the Note against iNDx. Dkt. No. 1 at 4. The Note states that it is governed by the laws of the Commonwealth of Pennsylvania. Dkt. No. 1-3 at 5 (Note). Under Pennsylvania law, the elements of a breach of contract claim are: (1) existence of a contract, (2) a breach of a duty imposed by the contract, and (3) resulting damages. *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).

Here, NMS alleges that the Note is a contract between NMS and iNDx. *Lackner*, 892 A.2d at 30; Dkt. No. 1 at 4. Second, NMS alleges that iNDx failed to perform under the terms of the PDA and Addendum, triggering an Event of Default. *Lackner*, 892 A.2d at 30; Dkt. No. 1 at 4. Upon an Event of Default, iNDx has a duty to immediately repay the outstanding principal and accrued interest on the Note. Dkt. No. 1-3 at 3 (Note). iNDx has not paid the principal or accrued interest, thus breaching its duty. Dkt. Nos. 1 at 4, 15-1 at 2 (Cassigneul Decl.). Finally, NMS alleges that it has suffered damages in the amount payable under the terms of the Note. *Lackner*, 892 A.2d at 30; Dkt. No. 1 at 5. Therefore, taking NMS's complaint as true, the Court finds that NMS sufficiently alleged a claim of breach of contract for iNDx's failure to pay the outstanding principal and accrued interest of the Note.[4]

### b. Breach of Contract (Additional Loans)

Claim 2 alleges a breach of the contract for the Additional Loans against iNDx. Dkt. No. 1 at 5. NMS alleges that it loaned $250,000 to iNDx on the same terms as the Note. *Id.* Accordingly, the sufficiency and merits of NMS's breach of contract claim

---

[4] A California breach of contract claim must further allege that the plaintiff performed under the contract or had an excuse for non-performance. *See Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002). NMS alleges it disbursed the loan to iNDx and fully performed under the terms of the Promissory Note. Thus, NMS states a breach of contract claim for relief under California law as well.

Case No. 16-cv-04425 NC   6

should be analyzed under Pennsylvania law, which requires: (1) existence of a contract, (2) a breach of a duty imposed by the contract, and (3) resulting damages. *Lackner*, 834 A.2d at 30.

First, NMS adequately pleads the existence of a contract. *Id.* In Pennsylvania, a contract is formed when parties (1) reach a mutual understanding, (2) exchange consideration, and (3) clearly define the terms of their bargain. *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003). NMS alleges that for consideration of its $250,000 loan, iNDx "was to repay [the Additional Loans] on the same terms as the Note." Dkt. No. 15-1 at 2 (Cassigneul Decl.). Thus, accepting NMS's allegations as true (1) iNDx agreed to (2) accept NMS's loan in exchange for repayment (3) at the terms delineated in the Note. *Weavertown*, 834 A.2d at 1172; Dkt. No. 15-1 at 2 (Cassigneul Decl.). This demonstrates the existence of a contract.[5]

Second, NMS alleges iNDx had a duty to repay loan principal and interest upon an Event of Default. *Lackner*, 892 A.2d at 30; Dkt. No. 1 at 5. iNDx allegedly has not repaid any of the outstanding balance, thereby breaching its duty. Dkt. No. 1 at 5.

Finally, NMS alleges it incurred damages from iNDx's failure to perform and non-repayment of the loan principal and interest. *Lackner*, 892 A.2d at 30; Dkt. No. 1 at 5. Thus, the Court finds that NMS sufficiently alleged its breach of contract claim for iNDx's failure to repay the Additional Loans.[6]

NMS has not alleged the existence of a written document. In considering the merits of NMS's claims, courts look to the validity of the statute of frauds as an affirmative defense to enforcement of the contract. *Martino v. Chapman*, No. 06-cv-02407 PCT, 2008 WL 110948, at *2 (D. Ariz. Jan. 8, 2008), *aff'd*, 370 F. App'x 828 (9th Cir. 2010). The

---

[5] "California law requires four elements to form a valid contract: (1) parties capable of contracting; (2) their mutual consent; (3) a lawful object; and (4) sufficient consideration." *Regents of Univ. of California v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006); Cal. Civ. Code § 1550. NMS has adequately pleaded the existence of a contract under California law as well.
[6] NMS alleged it fully complied with the terms of the Additional Loans, successfully stating a breach of contract claim under California law as well. *Amelco Elec.*, 27 Cal. 4th at 243.

Case No. 16-cv-04425 NC 7

Court applies the Pennsylvania statute of frauds as the terms stipulate that the contract is governed by Pennsylvania law and NMS did not specify where the contract was created. This contract is not subject to the statute of frauds under Pennsylvania law. *See* 33 Pa. Stat. Ann. § 1-5 (the statute of frauds applies to leases or interests in land, declarations or creations of trusts, promises to answer for the debts of another, and acceptances of a bill of exchange).[7]

### c. Breach of Contract (PDA and Addendum)

Claim 3 alleges a breach of contract claim under the PDA and Addendum. Dkt. No. 1 at 4. The contracts stipulate they are to be governed by California law. Dkt. Nos. 1-1 at 21 (PDA), 1-2 at 7 (Addendum). In California, to state a breach of contract claim, "the plaintiff must demonstrate a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and damage to the plaintiff." *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002).

Here, NMS alleges it entered into written contracts with iNDx under the terms of the PDA and Addendum. *Amelco*, 27 Cal. 4th at 243; Dkt. No. 1 at 5-6. Second, NMS alleges it performed under the terms of both contracts. *Amelco*, 27 Cal. 4th at 243; Dkt. No. 1 at 6. Third, NMS alleges that iNDx breached its duty to perform many of its obligations under the PDA, including failing to deliver fully functional Initial Devices required by § 3.4.2(ii); spending NMS-provided funds on uses not related to the development of products in violation of the PDA; and allowing its financial condition to deteriorate such that NMS was required to pay iNDx's obligations to avoid further damaging product development efforts. *Amelco*, 27 Cal. 4th at 243; Dkt. No. 1 at 6-7. NMS alleges that iNDx failed to perform its obligations under the Addendum by failing to deliver a functional New Device and by failing to comply with the reporting requirements. *Amelco*, 27 Cal. 4th at 243; Dkt. No. 1 at 7. Finally, NMS alleges it has suffered a loss of

---

[7] In California, contracts to loan more than $100,000 for business purposes by a lender engaged in the business of lending must be reduced to writing. Cal. Civ. Code § 1624. However, NMS is not engaged in the business of lending, so the contract is also not subject to the statute of frauds in California.

Case No. 16-cv-04425 NC          8

$79,000 from an unrepaid loan to iNDx as a result of iNDx's breach. *Amelco*, 27 Cal. 4th at 243; Dkt. No. 1 at 7. Thus, taking NMS's complaint as true, the Court finds NMS successfully alleged claims of breach of contract under the PDA and Addendum.

#### d. Common Count (Additional Loans)

Claim 4 alleges a claim of common count for money had and received against iNDx. Dkt. No. 1 at 7. In California, the elements of a claim of common count are: (1) a statement of indebtedness of a certain sum, (2) consideration, and (3) non-payment of the debt. *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460 (1997).

Here, NMS alleges it loaned iNDx a total of $250,000 in January and February 2016. Dkt. Nos. 1 at 7, 15-1 at 2 (Cassigneul Decl.). Second, in consideration of its loan, iNDx promised to pay back the principal with interest on the same terms as the Note. *Farmers*, 53 Cal. App. 4th at 460; Dkt. Nos. 1 at 7, 15-1 at 2 (Cassigneul Decl.). Finally, iNDx has not paid back any amount of the loan. *Farmers*, 53 Cal. App. 4th at 460; Dkt. Nos. 1 at 7, 15-1 at 2 (Cassigneul Decl.). Taking NMS's allegations as true, NMS has successfully pleaded its claim for common count.

### 2. Other Factors

The Court must also address the possibility of prejudice to the Plaintiff if a default is not entered, the amount of money at stake, the possibility that material facts may be in dispute, the possibility of excusable neglect, and the policy for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72.

First, if default judgment is not entered, NMS will have no remedy for iNDx's alleged breaches of contract or the common count claim. This would prejudice NMS, and weighs toward granting a default judgment.

Second, "[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02259 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). Here, NMS's first, second, and fourth claims seek relief equaling the outstanding principal of loans iNDx has not repaid plus accrued interest at the agreed-upon

Case No. 16-cv-04425 NC 9

rate. *See generally* Dkt. No. 1. NMS's third claim seeks to recover the amount NMS loaned iNDx to mitigate damage from the latter's breach of the PDA and Addendum. Dkt. No. 1 at 5-7. These damages are consistent with the harm caused by iNDx's alleged failure to repay the loan amounts. This factor supports granting default judgment.

Third, the Court considers the possibility of a dispute of material facts. *Eitel*, 782 F.2d at 1471-2. Here, there is a possibility of a dispute of material facts.

Fourth, the Court considers the possibility of the defendant's excusable neglect. *Id.* at 1472. iNDx was served notice of the initial complaint on August 8, 2016. Dkt. No. 7. In its Chapter 11 filings, iNDx also listed this case, by number and other identifying information, on its Statement of Financial Affairs. Dkt. No. 18-1 at 10 (Sullivan Amended Decl., Exh. B). Further, NMS's counsel notified iNDx's bankruptcy attorney via a phone call and followed up via email advising of NMS's intent to file for default. Dkt. No. 15-1 at 2 (Sullivan Decl.). The Court finds that iNDx's default is unlikely due to excusable neglect.

Finally, the Court must resolve cases on the merits whenever reasonably possible. *Eitel*, 782 F.2d at 1472. However, the Court may enter a default judgment when a defendant fails to defend an action. *PepsiCo. Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); Fed. R. Civ. P. 55(b). Here, iNDx has not responded to NMS's claims. Dkt. No. 18 at 8-9. Thus, the Court is not precluded from entering a default judgment.

Considering all the *Eitel* factors, the Court finds that an entry of default judgment against iNDx would be proper.

**D. Damages**

NMS requests damages resulting from the breach of the Note, the PDA and Addendum, and the Additional Loans. "[A]t the default judgment stage, a plaintiff need only provide admissible evidence as to damages, which includes witness testimony." *NewGen, LLC v. Safe Cig, LLC*, No. 12-cv-09112 RGK, 2013 WL 12124081, at *5 (C.D. Cal. May 10, 2013), *aff'd*, 840 F.3d 606 (9th Cir. 2016) (holding that damages from

Case No. 16-cv-04425 NC           10

default judgment on a breach of contract claim supported only by plaintiff's testimony was not "clearly erroneous"); *see Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages though testimony or written affidavit").

For the first breach of contract claim under the Note, NMS claims it is entitled to $150,000 in outstanding principal plus accrued interest.[8] Dkt. No. 1 at 5. NMS submitted the executed Note contract supporting both principal loan amount and the corresponding rate of interest. Dkt. No. 1-3 at 2 (Note). NMS also submitted a written declaration asserting that iNDx has not paid any amount due under the Note. Dkt. No. 15-1 at 2 (Sullivan Decl.). Accordingly, the Court finds that NMS is entitled to damages for breach of the Note amounting to $150,000 in principal and $11,458.33[9] in accrued interest as of June 12, 2017, for a total of $161,458.33. *NewGen*, 2013 WL 12124081 at *5.

Second, NMS claims that iNDx owes $250,000 in principal plus accrued interest for the Additional Loans.[10] Dkt. No. 1 at 5. In support of its claim, NMS submitted a written declaration asserting the existence of the loans, the interest rate, and the fact that iNDx has not repaid the loans. Dkt. No. 15-1 at 2 (Sullivan Decl.). Accordingly, the Court finds that NMS is entitled to damages for breach of the Additional Loans amounting to $250,000 in principal and $17,131.94 in accrued interest[11] as of June 12, 2017, for a total of $267,131.94. *NewGen*, 2013 WL 12124081 at *5.

Third, NMS claims it provided an additional loan of $79,000 to iNDx to mitigate the effect of iNDx's breach of the PDA and Addendum. Dkt. No. 1 at 7. NMS has not offered testimony or documentation to support its assertion of damages for this claim. Thus, NMS has not met its burden to "prove up all damages sought in the complaint."

---

[8] Interest accrues at a rate of 5.0% per 360-day year. Dkt. No. 1-3 at 2 (Note). The loan was disbursed on December 10, 2015. Dkt. No. 1 at 3.
[9] Note interest of $11,458.33 = $150,000 * 5% * (550 days / 360 days per year)
[10] The Additional Loans consist of two wire transfers: $150,000 sent on January 22, 2016, and $100,000 sent on February 25, 2016. Dkt. No. 1 at 3.
[11] January Additional Loan interest totals $10,562.50 = $150,000 * 5% * (507 days / 360 days per year); February Additional Loan interest totals $6,569.44 = $100,000 * 5% * (473 days / 360 days per year).

Case No. 16-cv-04425 NC 11

*PepsiCo,* 238 F. Supp. 2d at 1175; *see also NewGen* 2013 WL 12124081 at *5, *Bd. of Trustees* 389 F. Supp. 2d at 1226. The Court finds that NMS is not entitled to damages for its third breach of contract claim.

Fourth, NMS's request for damages under the common count claim resulting from non-payment of the Additional Loans is denied because recovery for these loans in the amount of $267,131.94 was already granted under NMS's second breach of contract claim.

In total, the Court RECOMMENDS the district court find NMS entitled to $428,590.27 in damages.

### E. Attorney Fees and Costs

NMS also seeks to recover attorneys' fees of $16,797 and costs of $1,306. Dkt. No. 21 at 2 (Second Sullivan Decl.). "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). In California, the prevailing party of a contract claim is entitled to reasonable attorneys' fees and costs if the contract provides for such an award. Cal. Civ. Code § 1717. Here, the Note stipulates that "[t]he Maker [iNDx] agrees to pay Holder's [NMS's] costs in collecting and enforcing this Note, including attorney's fees.". Dkt No. 1-3 at 2 (Note). Thus, NMS is entitled to reasonable attorneys' fees and costs.

The Court calculates fees by multiplying the reasonable hourly rate for attorneys in the "relevant legal community" with "comparable skill, experience, and reputation" by the reasonable hours spent on the litigation. *Cotton v. City of Eureka*, *Cal.* 889 F. Supp. 2d 1154, 1161 (N.D. Cal. 2012) (internal citation omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

NMS's motion for default judgment included a request for, but no accounting of, attorneys' fees and costs. The Court issued an order to provide attorneys' fees information. Dkt. No. 20. NMS complied with the Court's request with the declaration of attorney Christopher Sullivan, but submitted insufficient information for the Court to determine the reasonableness of his hourly rate. Dkt. No. 21 (Second Sullivan Decl.). NMS provided no additional information regarding his practice area of expertise, years of experience as an attorney, or what constitutes a reasonable rate in the community.

The Court may rely on its own familiarity with the legal market to determine the reasonableness of fees. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). NMS requests fees for Sullivan, a partner who bills between $625 and $640 per hour, Roxanne Bahadurji, an associate who bills $320 per hour, and Renee Sevilla and Michaela O'Rourke, two paralegals who bill between $140 and $145 per hour. Dkt. No. 21 at 3-4 (Second Sullivan Decl.). Sullivan has been a partner since 2014 and was admitted to the California Bar in 1990.[12] *Id.* at 2. Based the Court's research and experience, the Court finds that the rates for the associate and paralegals are reasonable. *See US Foods, Inc. v. Lalla Holding Corp.*, No. 13-cv-02328 HRL, 2014 WL 4809073, at *2 (N.D. Cal. Sep. 25, 2014), *report and recommendation adopted sub nom.*, No. 13-cv-02328 BLF, 2014 WL 5281058 (N.D. Cal. Oct. 15, 2014) (holding that $450 per hour is reasonable for a Bay Area attorney experienced in litigation matters in a default judgment case on a breach of contract claim). The Court was unable to find awards of damages to support the requested hourly rate of Sullivan, and based on the information provided finds that $500 per hour constitutes a reasonable rate.

NMS documented a total of 34.9 attorney hours and 9 paralegal hours related to the initial claim, the request for entry of default, the motion for default judgment, and the supplemental brief in support of default judgment. The Court finds these hours supported by itemized billing statements reasonable in light of the work performed. The Court

---

[12] The State Bar of California, *Attorney Search*, http://members.calbar.ca.gov/fal/Member/Detail/148083 (last accessed May 26, 2017).

Case No. 16-cv-04425 NC       13

further finds that NMS's stated costs of $1,306 are reasonable. Accordingly, the Court awards NMS $14,989.50 in attorneys' fees[13] plus costs of $1,306 for a total of $16,295.50.

## IV. CONCLUSION

The Court ORDERS that this case be reassigned to a district court judge because not all parties have consented to magistrate judge jurisdiction. 28 U.S.C. § 636(c).

After considering the *Eitel* factors, the Court RECOMMENDS that the district court GRANT NMS's motion for default judgment against iNDx and award:

1. Damages on the breach of contract claim for the Note totaling $161,458.33 in principal and accrued interest as of June 12, 2017.
2. Damages on the breach of contract claim for the Additional Loans totaling $267,131.94 in principal and accrued interest as of June 12, 2017.
3. Attorneys' fees and costs of $16,295.50.
4. In total, the Court recommends the district court award NMS $444,885.77 in damages, attorneys' fees, and costs.

Any party may object to this recommendation, but must do so within 14 days of being served. Fed. R. Civ. P. 72(b).

**IT IS SO ORDERED.**

Dated: June 12, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

---

[13] 14.1 partner hours at $500 per hour totaling $7,050; 20.8 associate hours at $320 per hour totaling $6,656; 4.3 paralegal hours at $140 per hour totaling $602; and 4.7 paralegal hours at $145 per hour totaling $681.50.

Case No. 16-cv-04425 NC          14